IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 26, 2017 at Knoxville

**EMMETT LAMON ROSEMAN v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Marshall County**
**No. 15-CR-87-PCR  Franklin L. Russell, Judge**
_____

**No. M2016-01051-CCA-R3-PC – Filed May 23, 2017**
_____

The Petitioner, Emmett Lamon Roseman, appeals the denial of post-conviction relief from his 2013 Marshall County Circuit Court convictions of possession of marijuana with intent to sell, sale of 0.5 grams or more of crack cocaine, delivery of 0.5 grams or more of crack cocaine, and three counts of failure to appear, for which he received an effective sentence of twenty years. In this appeal, the Petitioner contends that he was denied the effective assistance of counsel and that his guilty pleas were not knowingly and voluntarily entered. Discerning no error, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Wesley Hall (on appeal), Unionville, Tennessee, and Brian Belden (at hearing), Shelbyville, Tennessee, for the appellant, Emmett Lamon Roseman.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; Robert J. Carter, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

*Plea Acceptance Hearing*

At the plea acceptance hearing, the State provided a factual basis for the Petitioner's guilty pleas. The Petitioner acknowledged that he signed five documents,

which constituted his petitions to plead guilty. The Petitioner stated that he understood everything in each document. For each charge, the trial court explained to the Petitioner the potential sentence he might receive based upon potential range classifications. The trial court explained:

> And so I don't know what's going to happen at your sentencing hearing. Okay. I'm going to follow the law, but I don't know what's going to happen. If I don't know, General Barnard can't tell you, or your attorney, what's going to happen. If I don't know, your attorney can't tell you what's going to happen, because it's just up in the air.

During questioning by the trial court, the Petitioner indicated that he understood that he was pleading "open" and acknowledged that no one had made promises to him about what was going to happen at the sentencing hearing.

*Sentencing*

At the Petitioner's sentencing hearing, the trial court imposed a total effective sentence of twenty years in the Department of Correction. *State v. Emmett Lamon Roseman*, No. M2013-02150-CCA-R3-CD, 2014 WL 4071937, at *1 (Tenn. Crim. App. Aug. 19, 2014), *no perm app. filed*. On direct appeal, this court summarized the relevant facts from the Petitioner's sentencing hearing, as follows:

> [T]he presentence report, which was introduced at the sentencing hearing, reflects that on January 12, 2011, members of the 17th Judicial District Drug Task Force and detectives with the Lewisburg Police Department utilized the services of a confidential informant (CI). The CI purchased $60 worth of marijuana from the [Petitioner] in the parking lot of an apartment building on Haynes Street in Lewisburg. After the transaction, the [Petitioner] returned to an apartment on the top left side of the building. The agents and detectives watched the building for one or two hours and noticed several individuals arrive and leave from the [Petitioner's] apartment. One of the individuals, who was stopped by Agent Brad Martin, possessed a small bag of marijuana. Officer Tim Miller decided to approach the apartment and perform a "knock-and-talk." He walked up the stairs, looked through the blinds, and saw the [Petitioner] and a young female in the living room. When Officer Miller knocked on the closed door, he saw the female grab a Ziploc bag from the couch and run toward the rear of the apartment. The bag appeared to contain a large amount of marijuana. The [Petitioner] answered the door, and Officer Miller walked down the hall where the female had gone. He noticed a light on in the

bathroom off the hall. An empty Ziploc bag was lying on the floor and approximately three ounces of marijuana was floating on the water inside the toilet. The agents performed a consensual search of the [Petitioner] and found $450 of suspected illegal drug proceeds, including $60 from the controlled buy. A subsequent consensual search of the residence revealed two sets of digital scales in the master bedroom. The [Petitioner] spoke with the agents and acknowledged ownership of the marijuana and scales.

The presentence report further reflects that on October 19, 2011, Agent Brad Martin and Officer Tim Miller met with a CI, who told them that the [Petitioner] and Whitney Green were involved in the illegal distribution of cocaine. At approximately 7:04 p.m., the CI called Green and asked to buy $100 worth of crack cocaine. Around 7:21 p.m., Green sent the CI a text message, instructing him to meet her at Kris's Store. The [Petitioner] and Green arrived at the store in a red Ford Focus. The CI approached the car and had a "hand-to-hand exchange" with the [Petitioner]. Afterward, the CI rendezvoused with the agents and relinquished a small, white, plastic bag containing crack cocaine.

The presentence report also reflects that the [Petitioner] had two prior misdemeanor convictions for failure to appear; three convictions of assault; eight convictions of selling marijuana; four convictions of possessing marijuana; one conviction of disorderly conduct; and two convictions of possessing drug paraphernalia.

Renee Howell, a probation officer, testified that she prepared the [Petitioner's] presentence report. She stated that the [Petitioner] previously had probationary sentences revoked on at least two occasions. She also stated that the [Petitioner] was on probation when he committed the three failure to appear offenses; however, he was not on probation when he committed the drug offenses.

On cross-examination, Howell said that when she spoke with the [Petitioner], he indicated that he was trying to "turn his life around as best as he can." He told her that he was taking courses while he was incarcerated.

Regarding the conviction of possession of marijuana with the intent to sell, the parties agreed that the [Petitioner] was a Range II offender, that he was entitled to release eligibility after service of thirty-five percent of his sentence, and that he was subject to a sentence between two to four years.

The parties also agreed that the [Petitioner] was a Range I offender on the crack cocaine conviction, that he was entitled to release eligibility after service of thirty percent of his sentence, and that he was subject to a sentence between eight to twelve years. Finally, the parties agreed that the [Petitioner] was a Range III offender for his convictions of failure to appear, that he was entitled to release eligibility after service of forty-five percent of his sentence, and that he was subject to a sentence between four to six years.

To each conviction, the court applied enhancement factor (1), that the [Petitioner] has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range. Tenn. Code Ann. § 40-35-114(1). The court specifically noted that it did not consider the felony offenses used to establish the [Petitioner's] sentencing range but considered his multitude of misdemeanor offenses. The court also applied enhancement factor (8), that the [Petitioner], before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community, to all of the convictions. *Id.* at [§ 40-35-114](8). The court noted that the [Petitioner] had previously violated probation on at least two occasions. Finally, the court applied enhancement factor (13)(C), that the [Petitioner] was on probation at the time he committed the offenses, to the failure to appear convictions. The court applied mitigating factor (1), that the [Petitioner's] criminal conduct neither caused nor threatened serious bodily injury, to all of the convictions. Tenn. Code Ann. § 40-35-113(1). However, the court did not afford the factor "significant weight." After considering the enhancement and mitigating factors, the trial court sentenced the [Petitioner] to three years for the marijuana conviction, ten years for the crack cocaine conviction, and five years for each of the three failure to appear convictions.

The court further found that consecutive sentencing was appropriate because the [Petitioner] is an offender whose record of criminal activity is extensive. Tenn. Code Ann. § 40-35-115(2). Additionally, the court found that consecutive sentencing was appropriate for the failure to appear convictions because the [Petitioner] committed the offenses while on probation. The court observed that the [Petitioner] was arguably a professional criminal, noting that it did not "see a lot of other alternative means of support other than illegal activities"; however, the court declined to impose consecutive sentencing on this basis. *Id.* at [§ 40-35-115](1). The court ordered two of the [Petitioner's] failure to appear sentences to be served concurrently with each other but consecutively to the third failure to

appear sentence. The court further ordered the sentences for the drug offenses to be served concurrently with each other but consecutively to the sentences for failure to appear, for a total effective sentence of twenty years.

*Id.* at *1-3. Upon review, this court affirmed the trial court's sentencing determinations. *Id.*

*Post-Conviction Proceedings*

Thereafter, the Petitioner filed a timely pro se petition for post-conviction relief. Following the appointment of counsel, the Petitioner filed an amended post-conviction petition.

At the post-conviction relief hearing,[1] the Petitioner testified that he was incarcerated when he retained trial counsel to represent him and explained that trial counsel met with him at the jail twice for about ten to fifteen minutes both times. The Petitioner, who had a high school diploma, stated that trial counsel discussed the case with him and went over the State's discovery as it related to the charge of possession of marijuana with intent to sell. Trial counsel told the Petitioner that he had reviewed the "audio and video" recording[2] relating to the charges of sale and delivery of crack cocaine, but trial counsel failed to show this evidence to the Petitioner. The Petitioner stated that he had "no idea" what was on the audio and video recording; he said that trial counsel only told him that there was "a girl" on the tape.

On cross-examination, the State questioned the Petitioner regarding his truthfulness at the guilty plea acceptance hearing. The Petitioner recalled that before he pled guilty he spoke to trial counsel, signed some forms, and answered questions from the trial court. The Petitioner agreed that, during the plea acceptance hearing, the trial court went over all of the elements of the crimes to which he was pleading guilty. He acknowledged telling the trial court that he understood what it meant to plead open, that no one had promised him anything as to what his sentence would be, and that the trial court discussed the potential sentences that the Petitioner could receive including the potential length and the possibility of consecutive sentences. The Petitioner acknowledged that the trial court specifically asked him twice if anyone had promised him anything about what was going to happen at the sentencing hearing, and the

---

[1] We have summarized only the portions of the post-conviction hearing testimony relevant to the issues raised by the Petitioner on appeal.

[2] It is unclear from the record if this was one recording containing audio and video or if it was two recordings—one audio and one video.

Petitioner twice answered, "No sir." The Petitioner testified, however, that trial counsel told him that he "would get no more than [fifteen] years." The Petitioner stated that it was only after the entry of his guilty pleas that trial counsel told him about the audio and video recording of the cocaine sale in the discovery.

Trial counsel testified that he had been practicing law for three and a half years and handled mostly criminal matters. Trial counsel stated that he received a copy of discovery in the Petitioner's case, and he recalled reviewing the audio and video recording of the cocaine sale. He testified that he visited the Petitioner at the jail two or three times and that his normal practice would have been to take his laptop into the jail to review any audio and video recordings with the Petitioner. However, he could not specifically recall showing the Petitioner the audio and video recording at issue. Trial counsel stated that when he visited the Petitioner in jail he would stay for "[r]oughly an hour or so."

Trial counsel denied that he promised the Petitioner that he was going to receive a particular sentence in exchange for an open plea. He recalled that he discussed the charges with the Petitioner and the options available: take the deal that was offered, plead open, or go to trial. Trial counsel stated that he explained what each option meant, and he discussed the class and range of each count of the indictments and the possible sentence that he might receive. Trial counsel also told the Petitioner that he could not predict what sentence the Petitioner would receive at a sentencing hearing. Nonetheless, the Petitioner wanted to enter the guilty pleas.

On cross-examination, trial counsel testified that, "at the very least," he discussed with the Petitioner what was on the audio and video recording from discovery. Trial counsel reiterated that it was his custom to bring his laptop to the jail and review such discovery there with the client. However, he could not specifically recall if he did so in the Petitioner's case. On redirect examination, trial counsel stated that, if a client ever asked to see a recording in trial counsel's possession, he would show it to the client.

At the conclusion of the hearing, the post-conviction court found that the Petitioner received effective assistance of counsel and that the Petitioner entered an informed and voluntary plea. The post-conviction court noted that trial counsel consulted with the Petitioner both in court and on two or three occasions in the jail for about an hour at a time. The post-conviction court stated that there was no evidence that the Petitioner's case was "so complex that that was an inadequate time in which to discuss a decision and enter a plea." The court found that the Petitioner's testimony at the post-conviction hearing was not credible. It noted that, at the plea acceptance hearing, the trial court "went over in minute, tedious detail what it mean[t] to enter into an open plea." The post-conviction court stated:

I don't know how in the world I could have made it any clearer that there could be no promises, that if I didn't know what I was going to do, then no one could promise him what I was going to do, because if I didn't know, no one else knew.

Moreover, the Petitioner testified under oath at the plea acceptance hearing that "no one had promised him anything about the outcome of the sentencing." The post-conviction court accredited trial counsel's testimony that he did not make any promises to the Petitioner about what sentence the Petitioner would receive and found that trial counsel "made no such promise."

Additionally, the post-conviction court found that no discovery was withheld from the Petitioner. The post-conviction court further noted that, at the time of the plea acceptance hearing, the Petitioner stated he had no complaints about trial counsel's performance. The court stated:

Based upon the evidence presented at the evidentiary hearing and upon the [Petitioner's] lack of complaints about [trial] counsel at the plea acceptance hearing and based upon the extensive factual basis presented by [the State] at the plea acceptance hearing, it is found that [trial counsel] timely provided everything he needed to provide to [the Petitioner] for [the Petitioner] to make every decision he needed to make about pleading open and about persisting in that plea. There was no evidence that anything in the discovery helped the [Petitioner] in any way or was likely to give encouragement to a rational person to take the case to a jury trial.

The post-conviction court determined that "even if there were errors [by trial counsel] . . . there [was] just no evidence that but for those errors, there would have been a different outcome" and found that the Petitioner "fully understood what he was doing at the plea acceptance hearing." Accordingly, the post-conviction court entered a written order denying relief. This timely appeal follows.

## Analysis

On appeal, the Petitioner contends that trial counsel rendered ineffective assistance of counsel by advising the Petitioner that the trial court would "most likely sentence him to a total of [fifteen] years" and by failing to show the Petitioner the "audio and/or video" portion of his discovery. The Petitioner further asserts that, due to trial counsel's ineffectiveness, his guilty pleas were involuntarily and unknowingly made. He contends that he "may have chosen to take his cases to trial instead of pleading guilty" if he had

been able to view the video evidence and that he "may not have [pled] guilty" but for counsel's advice that he would likely receive a fifteen-year sentence. The State responds that the post-conviction court properly denied relief.

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). As such, we review a trial court's findings of fact under a de novo standard with a presumption that those findings are correct unless otherwise proven by a preponderance of the evidence. *Id.* (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). The trial court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015).

When reviewing the trial court's findings of fact, this court does not reweigh the evidence or "substitute [its] own inferences for those drawn by the trial court." *Fields*, 40 S.W.3d at 456. Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." *Id.* (citing *Henley*, 960 S.W.2d at 579); *see also Kendrick*, 454 S.W.3d at 457.

*Ineffective Assistance of Counsel*

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven in order for the court to grant post-conviction relief. *Strickland*, 466 U.S. at 687; *Henley*, 960 S.W.2d at 580; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Accordingly, if we determine that either factor is not satisfied, there is no need to consider the other factor. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Henley*, 960 S.W.2d at 579. We will not second-guess a reasonable trial

strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the *Strickland* analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)); *see also Goad*, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688); *see also Baxter*, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. *Goad*, 938 S.W.2d at 370. Therefore, under the second prong of the *Strickland* analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted).

A substantially similar two-prong standard applies when the petitioner challenges counsel's performance in the context of a guilty plea. *Hill v. Lockhart*, 474 U.S.52, 58 (1985); *Don Allen Rodgers v. State*, No. W2011-00632-CCA-R3-PC, 2012 WL 1478764, at *4 (Tenn. Ct. Crim. App. April 26, 2012). First, the petitioner must show that his counsel's performance fell below the objective standards of reasonableness and professional norms. *See Hill*, 474 U.S. at 58. Second, "in order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would have not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

In this case, the post-conviction court accredited trial counsel's testimony and found that trial counsel never promised the Petitioner that he would receive a particular sentence from the trial court. The record supports this finding as trial counsel denied that he promised the Petitioner that he would receive no more than fifteen years in exchange for his open guilty plea. Trial counsel testified that he told the Petitioner that he could not predict what sentence the Petitioner would receive at a sentencing hearing. Moreover, the record reflects that the trial court explained the concept of "pleading open" to the Petitioner at length during the plea acceptance hearing; the Petitioner indicated that he understood that he was pleading "open" and acknowledged that no one had made promises to him about what was going to happen at the sentencing hearing. The record

does not preponderate against the post-conviction court's factual findings, and the Petitioner has failed to establish deficient performance on the part of trial counsel.

Regarding the audio and video recording, the post-conviction court found that the Petitioner offered no evidence that the contents of the audio and video recording would have helped his defense and that he would have proceeded to trial based on the recording. A copy of the audio and video recording was not presented as evidence at the post-conviction hearing. Trial counsel, whose testimony the post-conviction court accredited, testified that it was his practice to bring his laptop to the jail in order to review audio and video recordings with clients. Although he did not specifically recall watching the recording with the Petitioner, he testified that he personally reviewed it and discussed the contents with the Petitioner. The Petitioner has failed to establish both deficient performance and prejudice based on this claim. He is not entitled to relief.

*Unknowing Guilty Plea*

When reviewing a guilty plea, this court looks to both the federal standard as announced in the landmark case *Boykin v. Alabama*, 395 U.S. 238 (1969), and the state standard as announced in *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977), *superseded on other grounds* by Tenn. R. Crim. P. 37(b) and Tenn. R. App. P. 3(b). *Don Allen Rodgers*, 2012 WL 1478764, at *5. Under the federal standard, there must be an affirmative showing that the plea was "intelligent and voluntary." *Boykin*, 395 U.S. at 242. Likewise, the Tennessee Supreme Court has held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e. that he has been made aware of the significant consequences of such a plea . . . ." *Mackey*, 553 S.W.2d at 340. "[A] plea is not 'voluntary' if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . ." *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting *Boykin*, 395 U.S. at 242-43).

In order to determine whether a plea is intelligent and voluntary, the trial court must "canvass[] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin*, 395 U.S. at 244. The trial court looks to several factors before accepting a plea, including:

> [T]he relative intelligence of the defendant; degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to

> plead guilty, including a desire to avoid a greater penalty that might result
> from a jury trial.

*Blankenship*, 858 S.W.2d at 904; *Howell v. State*, 185 S.W.3d 319, 330-31 (Tenn. 2006). Once the trial court has conducted a proper plea colloquy, it discharges its duty to assess the voluntary and intelligent nature of the plea and creates an adequate record for any subsequent review. *Boykin*, 395 U.S. at 244.

Statements made by a petitioner, his attorney, and the prosecutor during the plea colloquy, as well as any findings made by the trial court in accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Statements made in open court carry a strong presumption of truth, and to overcome such presumption, a petitioner must present more than "conculsory allegations unsupported by specifics." *Id.* at 74.

In denying relief, the post-conviction court determined that the Petitioner voluntarily entered the open plea, "fully understanding what it meant to plead open." It noted that the trial court "went over in minute, tedious detail what it mean[t] to enter into an open plea," and the Petitioner testified under oath at that hearing that "no one had promised him anything about the outcome of the sentencing." Additionally, the post-conviction court determined that trial counsel timely provided discovery information to the Petitioner so that the Petitioner could make an informed plea.

We agree with the post-conviction court that the Petitioner's decision to plead guilty was both voluntary and knowing. The record shows that the Petitioner had a high school diploma and was well-acquainted with criminal proceedings based on his prior criminal convictions. As previously determined, the Petitioner was represented by competent counsel who conferred with the Petitioner about what was on the audio and video recording and about the various options available to the Petitioner. Trial counsel discussed the class and range of each count of the indictment and the possible sentences that the Petitioner might receive. Trial counsel told the Petitioner that he could not predict what sentence the Petitioner would receive at a sentencing hearing. At the plea acceptance hearing, the Petitioner stated that he had no complaints about trial counsel's performance. Additionally, the trial court engaged in a lengthy plea colloquy with the Petitioner, explaining the potential sentence for each of his charges based on potential range classifications, and the trial court ensured that the Petitioner understood what it meant to plead open. Under these circumstances, the Defendant is not entitled to relief.

## Conclusion

For the aforementioned reasons, the judgment of the post-conviction court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE